**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**DEBORA L. GREGORY,**

> **Plaintiff,**

> **v.**                                   **CIVIL ACTION NO. 2:05cv318**

**CITY OF VIRGINIA BEACH,**

> **Defendant.**

*MEMORANDUM OPINION & ORDER*

Debora L. Gregory("Plaintiff") brought this action against the City of Virginia Beach ("Defendant" or the "City") claiming damages based on unlawful employment practices, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). Plaintiff alleges that gender discrimination and retaliation resulted in Defendant's failure to award her a promotion. The instant matter comes before the Court on Defendant's Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has filed a response to this motion. Oral argument is unnecessary as it will not aid the Court's decisional process. Thus, the matter is now ripe for determination. For the reasons set forth below, Defendant's Motion for Summary Judgment on Plaintiff's Title VII gender discrimination claim and Plaintiff's retaliation claim is **GRANTED**.

## I. FACTUAL AND PROCEDURAL HISTORY

For the purposes of this motion, the Court assumes the following facts to be true.[1]

### A.        2003 Promotion Process

Plaintiff is a female who began working as an Animal Control Caretaker for the Virginia Beach Animal Control Bureau ("VBAC") in October 1986.  In February 1987, Plaintiff was promoted to Animal Control Officer I, a position she held until December 1988.   In September 1992 Plaintiff was rehired at the same position, Animal Control Officer I.  In November 1993 she was promoted to Animal Control Officer II.  Since that time, Plaintiff has continued to serve in the capacity of Animal Control Officer II.

The VBAC, as part of the Virginia Beach Police Department ("Police Department"), follows the Police Department's promotional policies for all supervisory positions, including the position of Animal Control Supervisor.  According to policy, promotion to Animal Control Supervisor is based on an individual's performance in a competitive promotion process that includes a written exercise, and an oral interview.  After each candidate is evaluated by a panel in the above referenced areas, the scores are weighted to reach a final score for each candidate.  After the panel has discussed the candidates' performance, the top candidates are recommended to the Animal Control Superintendent for final review and selection.  The Animal Control Superintendent reviews the evaluations of the panel, the personnel files of the top candidates recommended, and may discuss the candidate's work performance with the candidate's immediate supervisor.  Finally, the Animal Control Superintendent makes a selection from the top candidates recommended by the panel.  The

---

[1] Rule 56(B) of the Local Rules of the United States District Court for the Eastern District of Virginia requires that a motion for summary judgment include a list of undisputed facts.  The Court assumes that any facts alleged in the motion for summary judgment are admitted unless controverted by the responding opposition brief.

Animal Control Superintendent is not limited to selecting the candidate who receives the highest numeric score during the panel evaluations.  The promotion policy, outlined above, was in place during the Animal Control Supervisor promotion process in August/September 2001 ("2001 promotion process") and January/February 2003 ("2003 promotion process").

Plaintiff's first attempt for promotion to Animal Control Supervisor was during the 2001 promotion process.  Plaintiff's attempt was unsuccessful, as Officer Wayne Gilbert received the highest score in the 2001 promotion process and was given the promotion.  On January 31, 2003, Plantiff submitted a timely application to participate in the second promotion process for Animal Control Supervisor.  Two male and two female Animal Control Officers, Plaintiff included, participated in the 2003 promotion process.

Terry Web, a Human Resources Analyst, was in charge of administering the 2003 promotion process.  On February 4, 2003, the written exercise portion of the promotion process was administered, and on February 10, 2003 the oral portion was administered.  Each applicant's performance was evaluated by a panel consisting of the following individuals: (1) Animal Control Superintendent, Wayne Gilbert ("Gilbert") (male), (2) Police Lieutenant Michael Dodson (male), (3) Sergeant Theresa Orr (female), and (4) Terry Webb ("Web") (female).  Each member of the panel made written comments and scored each candidate on a Section Comment Form.  After discussion, the panel unanimously concluded that Steve Kemper's ("Kemper") performance was superior to all other applicants, and recommended him to Gilbert as a top candidate.  After Human Resources converted all scores to reflect an 8 point scale, Kemper was the recipient of the highest scaled score.  Upon reviewing Kemper's personnel file, Gilbert confirmed with Human Resources that Kemper was the top-scoring candidate, and made the recommendation to the Chief of Police that he be given

3

the promotion.

On March 19, 2005, Web and Gilbert conducted a feedback session with Plaintiff.  Plaintiff received verbal feedback on her performance during the 2003 promotion process.  On March 26, 2003, Plaintiff met with Gilbert to declare her intention to file a grievance about the 2003 promotion process.  In this meeting, Plaintiff suggested that she was the victim of discrimination, but did not specifically label it as gender discrimination.  After the meeting, Gilbert contacted Human Resources for guidance on Plaintiff's complaint.  On March 27, 2003, Gilbert advised Plaintiff that, pursuant to Defendant's Grievance Policy, she would need to demonstrate that the promotion policy was not followed correctly.  Gilbert informed Plaintiff that she would need to contact someone in the Employee Relations Division of Human Resources to file the grievance.  Additionally, Gilbert advised Plaintiff that since she had mentioned the word "discrimination," she could also choose to contact either Gayle Koscho, the Virginia Beach EEO Coordinator, or her assistant, Melissa Bowers.  Gilbert gave Plaintiff, in writing, the names and numbers of the individuals Plaintiff would need to contact to pursue her grievance with the 2003 promotion process.

On April 2, 2003, Plaintiff filed a written grievance and presented it to Gilbert.  Plaintiff's grievance alleged that the 2003 promotion process was unfair given that the policies were "not followed or applied fairly."  (Gilbert Aff., Ex. D).  Specifically, Plaintiff claimed that more emphasis should have been placed on seniority as a selection criteria.  (Gilbert Aff., Ex. D).  Although Plaintiff mentioned the word "discrimination" in the written grievance, she did not expand further or give facts to support the allegations of discrimination.  (Gilbert Aff., Ex. D).

On April 21, 2003, Fagan Stackhouse ("Stackhouse"), Defendant's Director of Human Resources, responded to Plaintiff's written grievance.  (Gilbert Aff., Exh. F).  Stackhouse found that

Plaintiff's complaint failed to demonstrate that the promotion policy was not followed correctly. (Gilbert Aff., Exh. F).  Upon of Stackhouse's finding, Plantiff exercised her right under Defendant's Grievance Policy to appeal to the Virginia Beach Circuit Court.  After a hearing on June 19, 2003, the Virginia Beach Circuit Court affirmed Stackhouse's determination that Plaintiff's complaint was not an appropriate grievance.  (Gilbert Aff., Exh. G).

     **B.**     **The Investigation**

     On July 9, 2003, Richard LaMark ("LaMark"), a Virginia Beach resident, called Gilbert to make a complaint against Plaintiff for actions she engaged in while performing her work duties. After LaMark filed an official complaint with the Police Department's Professional Standards Office, an investigation into Plaintiff's conduct ensued.  Such an investigation is standard policy when a citizen makes a complaint against a member of the Police Department.  The investigation officially began on July 11, 2003.  In a meeting held on July 14, 2003, Plaintiff inquired as to why Gilbert was conducting the investigation rather than the Professional Standards Office.  Plaintiff indicated that she was not comfortable having Gilbert conduct the investigation because she knew Gilbert and LaMark to be friends.  Gilbert complied with Plaintiff's request, and informed her that the Professional Standards Office would conduct the investigation.

     Jim Kaiser ("Kaiser") conducted the investigation on behalf of the Professional Standards Office.  Kaiser made the determination that the complaint involved a possible violation of Department Rule 45.  At the conclusion of the investigation, the Professional Standards Office turned the file over to Gilbert for a final determination on the complaint.  Upon review of the file, Gilbert found the complaint against Plaintiff unfounded.  On September 14, 2003, LaMark was informed that his complaint against Plaintiff was unsupported by the evidence.  Plaintiff was never

5

disciplined or otherwise counseled as a result of the investigation.

**C.      Procedural Posture**

On May 27, 2005, Plaintiff filed a Complaint against the Defendant in the Eastern District of

Virginia alleging discrimination on the bases of gender and retaliation, both in violation of Title VII.

On July 12, 2005, Defendant filed its Answer.  On November 17, 2005, Defendant filed the instant

Motion for Summary Judgment.   Plaintiff filed a Response on December 5, 2005.  On the same

day, Defendant filed a Reply to Plaintiff's Response.  This matter is now ripe for determination by

the Court.

## II.  LEGAL STANDARD

Rule 56(c) provides for summary judgment if the Court, viewing the record as a whole,

determines "that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Haulbrook v. Michelin North*

*Amer., Inc.*, 252 F.3d 696, 700 (4th Cir. 2001) (citing *McKinney v. Bd of Trustees of Mayland*

*Cmty. Coll.*, 955 F.3d 924, 928 (4th Cir. 1992)) (stating that "summary judgment should be granted

only when it is perfectly clear that no issue of material fact exists, and it is not necessary to inquire

further into the facts in order to clarify the operation of the law").  In deciding a motion for

summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in the

light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255

(1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).  To defeat summary

judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions,

interrogatories, or other evidence to show that there is in fact a genuine issue for trial.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Summary judgment will be granted "against a party

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. While courts must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue, "summary judgment disposition remains appropriate if the [non-movant] cannot prevail as a matter of law." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996); *Ennis v. Nat. Ass'n of Bus. and Educ. Radio, Inc.*, 53 F.3d, 55, 62 (4th Cir. 1995) (requiring the plaintiff point to "any circumstance "surrounding . . . discharge that credibly raises an inference of unlawful discrimination).

## III.  DISCUSSION

**A.     Title VII Claim for Gender Discrimination**

Once a complainant has carried the initial burden of establishing a prima facie case of discrimination, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973). The complainant is then given an opportunity to show that the employer's reason is in fact pretext. *Id*. In other words, the complainant is permitted to put on evidence to establish that the legitimate, nondiscriminatory reason is a coverup for a discriminatory decision. *Id*. at 803.

In this case, Defendant acknowledges that the facts are sufficient such that Plaintiff can establish a prima facie case of gender discrimination as set forth by *McDonnell Douglas*, and further supported, in the failure to promote context, by *Patterson v. McLean Credit Union*, 491 U.S. 164, 186-87 (1989).[2]  As such, Plaintiff's ability to establish a prima facie case for gender discrimination

---

[2]  The complainant in Title VII actions carries the initial burden of establishing a prima facie case of discrimination by the preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802.  To establish a prima facie case of discrimination, a plaintiff must establish that he or she (1) is a member of a protected class; (2) applied for the position in question; (3) was

is undisputed.  However, Defendant argues that summary judgment is appropriate because Plaintiff

can not produce any evidence of pretext.  Specifically, Defendant argues that Plaintiff fails to

produce evidence to rebut its legitimate, nondiscriminatory reason to promote Kemper, a male

employee, because of his superior performance during the 2003 promotion process.  In rebuttal,

Plaintiff attempts to offer evidence to create a genuine issue of material fact that Defendant's

legitimate, nondiscriminatory reason is pretext.  First, Plaintiff argues that Defendant's proffered

reason is pretext because Gilbert made the decision to select Kemper before the scores from the oral

interview and written exercise had been compiled.  Second, Plaintiff argues that Defendant's

legitimate, nondiscriminatory reason is pretext for discrimination because women make up 69% of

the Defendant's Bureau of Animal Control, and none have ever been appointed to a supervisory

position.  The Court will address Plaintiff's arguments on these two grounds in turn.

### 1.  Gilbert's Decision

With respect to Plaintiff's first argument, the Court finds Plaintiff's assertions of pretext

inadequate to establish that there is a genuine issue of fact for trial.  On review of the record, it is

clear that Gilbert believed "that Kemper was the top candidate coming out of the interviews," as he

stated that, "[I]  think coming out of that interview process, that – that interview process weighed

heavy on my final decision on who I was going to promote."  (Gilbert Dep. 79:20-80:1).  Gilbert

does not, however, state that he selected Kemper for the promotion at that time, but rather he was a

qualified for that position; and (4) the application was rejected under circumstances that give rise
to an inference of unlawful discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506
(1993); *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999).  In this case, it
is undisputed that (1)  Plantiff is a female, (2) that she applied for the position of Animal Control
Supervisor during the 2003 promotion process,(3) that she possessed the minimum qualifications
to compete for the position, and (4) a male was selected for the position.

top candidate at the completion of the interview process.  (Gilbert Dep. 79:20-80:1).  In fact, it was

not Gilbert alone who believed that Kemper was the top candidate coming out of the interview

process.  All members of the panel evaluated and discussed the candidates' performances at the

conclusion of all of the interviews.  From the discussion, it was unanimous that Kemper be

recommended as the top candidate for further consideration by Gilbert.  Pursuant to the Animal

Control Supervisor Selection Process ("Selection Guidelines"), the Court finds that Gilbert and the

panel followed the required protocol in their selection of Kemper as the top candidate, as the

Selection Guidelines provide, in relevant part that:

> Panel members will discuss their evaluation and reach consensus
> within two points for each evaluation criteria.  Based on the panel
> evaluation, a selection recommendation will be made to the
> Animal Control Superintendent . . . The Animal Control
> Superintendent . . . will review the personnel file(s) of top
> candidate(s) and may discuss performance strengths/weaknesses
> with the candidate's supervisor(s) . . . A candidate will be selected
> by the Animal Control Superintendent based on his/her review of
> the panel evaluation and information obtained pertaining to
> performance/background . . . The Animal Control Superintendent
> will not be limited to choosing the candidate with the highest
> numeric score from the written/oral evaluations.

(Manning Aff., Exh. A).  As evidenced by the Selection Guidelines, Gilbert was not required to

promote the individual with the highest score.  As such, Gilbert was not required to wait for the

scaled scores from Human Resources before the panel could choose the top candidates to proceed to

the next level in the promotion process.  Even assuming the Selection Guidelines required Gilbert to

wait for Human Resources to submit the final scaled score before making a recommendation,

Kemper, as the candidate with the highest score, would have still been deserving of the promotion.

        Further, Plaintiff admits that she has no evidence to suggest that any of the panel members,

9

including Gilbert, have gender bias. (Pl. Dep. at 123:24-124:3). "It is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 824 (1st Cir. 1991). Plaintiff has failed to provide specific facts, in this case, that would enable a jury to believe that Defendant's reason for choosing Kemper for the promotion was for a discriminatory motive, rather than because he was the most qualified candidate for the job. *See Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 258-59) ("Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision."). In essence, Plaintiff's core disagreement with the 2003 promotion process is that she subjectively believed she was more qualified than Kemper. Plaintiff's own subjective opinion of her qualifications is insufficient to support Plaintiff's suggestions that Defendant's legitimate, nondiscriminatory reason is pretext for discrimination. *See Evans* 80 F.3d at 960 (finding that "unsubstantiated allegations and bald assertions concerning [a plaintiff's] own qualifications and the shortcomings of [the plaintiff's] co-workers fail to disprove [an employer's] explanation or show discrimination.") (citations omitted); *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988) (holding that plaintiff's own opinions and conclusory allegations do not have sufficient "probative force to reflect a genuine issue of material fact"). For the above reasons, Plaintiff's attempt to prove pretext on this ground falls short of rebutting Defendant's legitimate, nondiscriminatory reason for not promoting Plaintiff.

## 2. Statistical Proof

With respect to Plaintiff's second argument, Plaintiff asserts that since September 1992 there have been a total of four promotional events in the Animal Control Bureau, and during this time Defendant has failed to promote a woman to a supervisory position even though they comprise 69% of the total number of employees. Plaintiff asserts that such statistics are suggestive of gender bias, and support her argument that Defendant's proffered legitimate, nondiscriminatory reason is, in fact, pretext.

It is well established that "[s]tatistics can provide important proof of employment discrimination" in Title VII cases to demonstrate the employer's proffered reason for its employment decision was pretext for discrimination. *Carter v. Ball*, 33 F.3d 450, 456 (4th Cir. 1994). However, the "pronouncement that statistical evidence is 'unquestionably relevant' in a Title VII case cannot be read to foreclose the exclusion of evidence with little or no probative value." *Id.* The court must take in consideration the surrounding facts and circumstances in determining the usefulness of the statistics. *Id.* Specifically, in failure to promote discrimination cases, "the relevant [statistical] comparison is between the percentage of minority employees and the percentage of potential minority applicants in the qualified labor pool." *Id.*

In *Hagans v. Adams*, 651 F.2d 622, 627 (1981), a female employee brought suit against the government alleging unlawful discrimination on the basis of gender when a male employee was hired to a position for which she alleges to have been more qualified. In an effort to show discriminatory intent, the female employee offered statistics showing that only 2.8% of all GS-14 level employees were women. The district court disregarded this statistic, finding that since there were only four GS-14 positions available in that particular office, and a women held one of the four

positions, the statistic should have been 25% for that particular office.  *Id*.  The Ninth Circuit, found

both statistics irrelevant in showing discrimination on the basis of gender.  The court found that a

sample size of four was "much too small to be meaningful," and the 2.8% statistic was

"meaningless without evidence that there existed somewhere a pool of women applicants qualified

to assume those . . . positions."  *Id*.

        This Court finds Plaintiff's case analogous to *Hagans*.  Similar to the female employee in

*Hagans*, Plaintiff is claiming the Defendant's failure to promote her was unlawful gender

discrimination.  Plaintiff, like *Hagens*, attempts to use statistical data to show discriminatory intent.

Plaintiff cites four promotional events: (1) year 2000, in which no females were eligible for the

promotional opportunity; (2) year 2001, where women, including Plaintiff, competed for the

opportunity; (3) year 2002, in which no females were eligible for the promotional opportunity; and

(4) year 2003, in which two women, including Plaintiff, competed for the promotion.  Under these

circumstances, women only qualified to participate in 2 of the 4 promotional events, leaving only 2

promotional events for statistical analysis.  Accordingly, like *Hagens*, the Court finds this sample

size too small to be meaningful evidence of discrimination.  Further, Plaintiff has failed to provide

the Court with the qualifications of the women involved in the promotional events.  Therefore,

similar to *Hagens*, the statistics that Plaintiff provides, standing alone, is "meaningless without

evidence that there existed somewhere a pool of women applicants qualified to assume those . . .

positions."  *Hagans v. Adams*, 651 F.2d at 627.  For the reasons set forth above, Plaintiff fails to

establish, through its second argument, that Defendant's articulated nondiscriminatory reason is

pretext for discrimination.

Accordingly, the Court finds Plaintiff's arguments insufficient to establish the existence of an element essential to Plaintiff's case on which she would bear the burden of proof at trial, namely that Defendant's legitimate, nondiscriminatory reason is a pretext for discrimination. Accordingly, Plaintiff's claim of Title VII gender discrimination fails as a matter of law. Defendant's Motion for Summary Judgment Motion on the Title VII gender discrimination claim is **GRANTED**.

## B.      Title VII Claim for Retaliation

To state a prima facie claim for retaliation, a plaintiff must allege that: (1) plaintiff engaged in protected activity; (2) the employer acted adversely against the plaintiff; and (3) the employer's adverse action was causally connected to the plaintiff's protected activity. *Beall v. Abbott Laboratories*, 130 F.3d 614, 619 (4th Cir. 1997) (citing *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994)). The Court will analyze each element in turn.

### 1. Protected Activity

Element one requires that a plaintiff participated in a protected activity under Title VII or opposed an unlawful employment practice as recognized under Title VII. *See* 42 U.S.C. § 2000e-3(a). Title VII provides in part that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this [title] or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this [title]." 42 U.S.C. § 2000e-3(a). Defendant argues that Plaintiff did not participate in a protected activity under the statute. Specifically, Defendant contends that Plaintiff's written grievance does not rise to the level of a protected activity because the complaint was vague and ambiguous. Further, Defendant argues that Plaintiff never specifically complained of gender discrimination to the proper

EEOC authorities, and her references to discrimination never specifically alleged gender

discrimination.  The Court finds Defendant's argument unpersuasive.

Plaintiff filed an internal written grievance with Human Resources that referenced her belief

that there was some form of discrimination in the 2003 promotion process.  (Gilbert Aff., Exh. D).

Although, Plaintiff did not specifically detail the type of discrimination she experienced, it is clear

that Defendant knew that Plaintiff believed she was discriminated against in some form.  This is

evidenced by the fact that Gilbert gave Plaintiff the name and number for Defendant's EEO

Coordinator.  Further, pursuant to Defendant's internal grievance policy, Plaintiff appealed her

grievance to the Virginia Beach Circuit Court.  (Gilbert Aff., Exh. G).  As such, this Court finds

Plaintiff's internal grievance sufficient to satisfy the protected activity element.  *See Thompson v.*

*Potomac Elec. Power. Co.,* 312 F.3d 645, 650 (4th Cir. 2002) (plaintiff engaged in protected activity

by filing internal discrimination complaint).

## 2.  Adverse Act

The second element that Plaintiff must prove is that the employer acted adversely against

her.  Plaintiff's retaliation claim arises out of an internal investigation into her conduct while

performing work duties.  Plaintiff argues that the investigation was conducted against her in

retaliation for the internal grievance she filed about the 2003 promotion process.   In rebuttal,

Defendant argues that the investigation was a standard procedure conducted, pursuant to Police

Department policy.  Further, Defendant argues that Plaintiff was not terminated as a result of the

investigation, and that the investigation did not affect the terms, conditions, and benefits of her

employment.  The Court finds Defendant's arguments persuasive.

The Fourth Circuit has held that an adverse employment action includes any retaliatory act

14

"if, but only if" that act affected the "terms, conditions, or benefits" of his employment. *Von Gunten v. Maryland*, 243 F.3d 858, 866 (4th Cir. 2001) (internal quotation marks omitted).  In this case, there is no evidence in the record to show that the terms, condition or benefits of Plaintiff's employment were adversely affected.  Plaintiff was not disciplined or reprimanded, nor did she suffer a financial loss as a result of the investigation.  (Gregory Deposition, p. 50, ¶ 6-18).  Plaintiff attempts to argue that because of the investigation she "was stripped of [her] authority to obtain a warrant for any criminal offense concerning a law enforcement officer." (Pl.'s Resp. at 10). This argument is unsupported by the facts.  Plaintiff, by her own admission, acknowledges that the investigation resulted in an administrative procedure clarifying the role of *all* animal control officers.  (Pl. Dep. At 49:24-50:5) (emphasis added).  In fact, since the investigation Plaintiff has been recognized for her superior performance on the job.  (Gilbert Aff. ¶ 50).  As such, it is clear that there was no adverse actions taken against Plaintiff, and thus she fails to meet the second element needed to state a prima facie case for retaliation.

### 3.  Causal Connection

Even assuming Plaintiff were able to establish an adverse employment action, Plaintiff can not show that the adverse action was causally connected to Plaintiff's protected activity.  To establish a causal link between the protected activity and the adverse employment action, the decision-maker must have knowledge of the employee's protected activity.  *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 655 (4th Cir. 1998).  In this case, it is undisputed that Defendant did not initiate the investigation, and that Kaiser, the individual who conducted the investigation, was unaware that Plaintiff filed an internal grievance about the 2003 promotion process.  Accordingly, without knowledge of the grievance, there can be no causal link between the

15

protected activity and any adverse employment action.  The Court finds that Plaintiff fails to satisfy the third element.

Based on the foregoing, the Court finds that Defendant has shown that no genuine issue of material fact exists on Plaintiff's retaliation claim, and Defendant's Motion for Summary Judgment on Plaintiff's retaliation claim is **GRANTED**.

### IV.  CONCLUSION

For all the foregoing reasons, Defendant's Motion for Summary Judgment on Plaintiff's Title VII gender discrimination and retaliation claims is **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the parties.

**IT IS SO ORDERED.**


_____/s/_____
Raymond A. Jackson
UNITED STATES DISTRICT JUDGE


Norfolk, Virginia
January   24 , 2004